**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| CHARLES LEE GARCIA, | ) | CV 13-7110-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **AND ORDER OF REMAND** |
| Defendant. | ) ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is granted in part and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on October 2, 2013, seeking review of the Commissioner's denial of disability benefits. The parties filed a consent to proceed before a United States Magistrate Judge on November 8, 2013. Plaintiff filed a motion for summary judgment on

April 18, 2014. Defendant filed an opposition to Plaintiff's motion for summary judgment on June 18, 2014. Plaintiff filed a reply on June 25, 2014. The Court has taken the motion under submission without oral argument. See L.R. 7-15; October 3, 2013 Minute Order.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since July 21, 2011, based in part on depression, sciatica, and arthritic knees, with a "history" of substance abuse (Administrative Record ("A.R.") 75-76, 161-64, 183).[1] Plaintiff reported that, among other things, he sometimes hears voices and has poor memory and poor comprehension (A.R. 190).

An Administrative Law Judge ("ALJ") found Plaintiff has the following severe impairments: "history of polysubstance dependence (alcohol, cocaine, vicodin), lumbar spine sciatica, [and] left knee pain" (A.R. 16).[2] However, the ALJ found Plaintiff's "medically determinable mental impairments of depression and psychotic disorder" nonsevere (A.R. 17). According to the ALJ, these impairments "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" (id.). Purporting to consider the only mental limitation the ALJ specifically acknowledged (i.e., "mild"

---

[1] Plaintiff admitted using drugs (cocaine and "pills") as late as June, 2011. See A.R. 263.

[2] The non-examining state agency review physicians stated that while there was evidence of both alcohol and drug addiction, this evidence was not material to the disability determination (A.R. 89). Plaintiff reportedly was "alert" and "sober" but talking "incessantly" at his field office interview (A.R. 178-80).

limitation in Plaintiff's concentration, persistence or pace) (A.R. 17), the ALJ found: (1) Plaintiff retains a residual functional capacity for medium work with some physical limitations but no mental limitations (A.R. 18);[3] and (2) a person with Plaintiff's residual functional capacity could perform certain medium and light jobs identified by the vocational expert (A.R. 22-23; see A.R. 70-72 (vocational expert testimony)). The ALJ therefore found Plaintiff not disabled (A.R. 23).

The Appeals Council considered a letter submitted by Plaintiff's counsel after the ALJ's adverse decision but denied review (A.R. 5-9 (referencing A.R. 216-17)).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).

---

[3] Specifically, the ALJ found Plaintiff can:

> . . . lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour workday; sit without restriction; frequently bend and stoop; and occasionally kneel, crawl, squat and climb.

(A.R. 18).

3

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

**DISCUSSION**

The Administration materially erred in connection with the evaluation of Plaintiff's alleged mental problems. Remand is appropriate.

**I.  Summary of the Medical Records Relevant to Plaintiff's Alleged Mental Problems**

Consultative psychiatrist Dr. Laja Ibraheem prepared a Complete Psychiatric Evaluation for Plaintiff dated June 22, 2011 (one month before the alleged onset date) (A.R. 262-65). Dr. Ibraheem observed that Plaintiff "was clearly responding to internal stimuli" during the evaluation (A.R. 262). According to Dr. Ibraheem, Plaintiff "denied auditory or visual hallucinations" but also reported "feeling bad," being "very depressed," and "hearing voices" (id.).[4] Plaintiff claimed he was unable to work "because of [his] emotional problems"

---

[4] Later in the report, Dr. Ibraheem explained:

> The patient did not appear to have normal reality contact. There was some evidence of auditory and/or visual hallucinations during the interview and he appeared [] to be responding to internal stimuli on more than on occasion.

(A.R. 264).

4

(id.). Plaintiff also described alleged memory problems and panic attacks (id.).

Plaintiff reported two psychiatric hospitalizations for being depressed and suicidal, and two stays in jail or prison during which he received no psychiatric treatment (A.R. 263). Plaintiff was not seeing a psychiatrist or psychologist on a regular basis at the time of the evaluation (id.). Although Plaintiff had reported earnings for only six years between 1974 and 1982 (A.R. 175), Plaintiff told Dr. Ibraheem that he had worked on and off for 20 years with horses and stopped working because of "emotional problems and a bad knee" (A.R. 263). Plaintiff admitted a history of drinking alcohol but said he had quit five years earlier;[5] Plaintiff admittedly would do "pills or coke, very little, once a week" (id.).

On examination, Dr. Ibraheem reported that Plaintiff "tried to be cooperative" but was somewhat withdrawn, did not respond well to questioning, and made limited eye contact (A.R. 264). Plaintiff's thought processes reportedly were tangential, his mood "depressed," and his affect tearful (id.). Dr. Ibraheem characterized Plaintiff's insight as fair and his judgment as limited or poor (A.R. 264-65). According to Dr. Ibraheem, Plaintiff's memory and concentration were limited: he could recall two out of three items after five minutes, was unable to do serial sevens, stating, "93, I don't remember," and misspelled the word "brown" when asked to spell the word backwards (id.).

---

[5] Plaintiff was hospitalized for an overdose involving alcohol in June of 2009 (A.R. 227).

1    Dr. Ibraheem diagnosed Plaintiff with psychotic disorder, not
2    otherwise specified, and noted to rule out mood disorder with
3    psychological factors or schizoaffective disorder, depressed type
4    (A.R. 264). Dr. Ibraheem assigned Plaintiff a Global Assessment of
5    Functioning ("GAF") Score of 45 (A.R. 265).[6]

7    Dr. Ibraheem opined that Plaintiff would not be able to focus
8    attention adequately and would have "significant" difficulty following
9    one- and two-part instructions and remembering and/or completing even
10   simple tasks (id.). Dr. Ibraheem said Plaintiff would be unable to
11   tolerate work stress, maintain regular work attendance, and/or work
12   without supervision (id.). According to Dr. Ibraheem, Plaintiff would
13   have "significant" difficulty interacting with supervisors, coworkers,
14   and the general public (id.). Plaintiff's prognosis was "guarded"
15   (id.).

17   Plaintiff's mental health treatment record is sparse.
18   Plaintiff's counsel suggested at the administrative hearing that the
19   sparsity of this record reflected the alleged fact that Plaintiff's
20   serious mental problems themselves had interfered with Plaintiff

---

[6]   Clinicians use the GAF scale to report an individual's overall level of functioning. "The scale does not evaluate impairments caused by psychological or environmental factors. A GAF between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Morgan v. Commissioner, 169 F.3d 595, 598 n.1 (9th Cir. 1999); accord Tagger v. Astrue, 536 F. Supp. 2d 1170, 1173 n.4 (C.D. Cal. 2008) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000 (Text Revision)).

getting regular treatment (A.R. 32, 34). Counsel argued that the lack of an extensive treatment record did not necessarily mean a lack of a longstanding psychiatric disorder (id.). Consistent with Plaintiff's report to Dr. Ibraheem, Plaintiff stated at the hearing that he has had two psychiatric hospitalizations (A.R. 32-33, 42-44).

The psychologist medical expert who testified at the administrative hearing did not offer any specific opinion regarding Plaintiff's mental limitations. See A.R. 36-41, 47-56. The expert said that the only data point he had to review was Plaintiff's June, 2011 psychiatric consultative examination, which the expert felt did not include enough information to confirm the examiner's evaluation, or establish how long Plaintiff may have been in the condition he was in at the time of the evaluation (A.R. 39-41, 47-48). The expert also declined to offer an opinion concerning how Plaintiff would function if "properly treated both in terms of support services and medication" (A.R. 48-49). The expert was comfortable inferring from the record that Plaintiff's psychiatric condition probably existed by January, 2011 (six months prior to the examination) (A.R. 49-50). The expert described Plaintiff's June, 2011 examination results as suggesting a "very serious diagnosis and GAF score and symptomatology" (A.R. 55).

The expert asked Plaintiff if he recalled whether he was hallucinating at the time of the June, 2011 examination (A.R. 50-54). Plaintiff said he did not know if he had been hallucinating but said he had been depressed then (A.R. 54). The expert asked if Plaintiff was depressed at the time of the hearing, and Plaintiff answered "very" (id.). The expert asked Plaintiff to help the court understand

why Plaintiff had not "sought out any medical assistance to get some medication to help address the depression" (id.). Plaintiff responded that the medication he previously was taking made him sleep and that he did not go back to the doctor because he "got in an argument" with her (A.R. 55). The expert ultimately indicated that he did not know if there was enough evidence to evaluate Plaintiff's condition "one way or the other," and suggested the ALJ hold the record open for up to 90 days so that any supporting information could be supplied (id.).[7]

The record contains treatment notes from a hospitalization from June 9, 2009 through June 10, 2009 at Kaiser for an overdose and acute hepatitis likely due to the overdose (A.R. 226). Plaintiff was reported to have a history of alcohol use and possible opiod dependence and was awaiting Medicaid approval for rehabilitation (id.). Plaintiff admitted taking six vicodin, drinking a large amount of alcohol, and taking some cocaine and Xanax (A.R. 227). A psychiatric evaluation concluded that Plaintiff would benefit from an inpatient psychiatric stay for depression for what appeared to have been a suicide attempt (id.).

///
///
///
///
///

---

[7] The ALJ left the record open no more than three days. See A.R. 23, 69, 78 (noting dates of hearing and decision as May 1, 2012 and May 4, 2012, respectively).

Plaintiff transferred to the Alhambra Kaiser Hospital on June 9, 2010 (A.R. 227, 231, 296-308). His admitting GAF was 20,[8] his admitting diagnosis was polysubstance abuse, not otherwise specified, and it was noted to rule out major depression, adjustment disorder and dysthymia (A.R. 299, 303). Plaintiff said, "Life has an end to me. There is nothing else. I overdosed on pills" (A.R. 299). Plaintiff reported a long history of mental illness, feeling hopeless and helpless, and said that his condition had worsened because he could not find a job and had been denied Social Security benefits (A.R. 302).[9] In the hospital, Plaintiff was observed to be disorganized, impulsive and unpredictable (A.R. 300). Paxil was prescribed for Plaintiff's depression (A.R. 300-01). On discharge, Plaintiff's diagnosis was major depression and his GAF was 45 (A.R. 301).

///
///
///
///
///
///
///
///
///

---

[8] A GAF score of 11-20 indicates "Some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g., smears feces) or gross impairment in communication (e.g., largely incoherent or mute). See DSM-IV-TR at 34.

[9] Plaintiff had been denied disability benefits on a prior application on May 30, 2008 (A.R. 179).

**II.   Analysis**

Social Security Ruling ("SSR") 85-28[10] governs the evaluation of whether an alleged impairment is "severe":

> An impairment or combination of impairments is found "not severe" . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . . i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities. . . .
>
> If such a finding [of non-severity] is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.
>
> * * *
>
> Great care should be exercised in applying the not severe impairment concept.  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end

---

[10]   Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

10

1   with the not severe evaluation step.  Rather, it should be
2   continued.

SSR 85-28 at *2-*4.  See also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (the severity concept is "a de minimis screening device to dispose of groundless claims") (citation omitted); accord Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005).

In the present case, the medical evidence does not "clearly establish" the non-severity of Plaintiff's alleged mental problems. Rather, the medical evidence, including the opinion of an examining physician, appears to suggest that Plaintiff's alleged mental problems cause more than "minimal" effects on Plaintiff's mental ability to perform certain basic work activities.  Yet, the ALJ not only found that Plaintiff has no severe mental impairment but also found that Plaintiff retains an unlimited mental residual functional capacity. The ALJ's findings violated SSR 85-28 and the Ninth Circuit authorities cited above.

The respect ordinarily owed to examining physicians' opinions buttresses the Court's conclusion that the ALJ erred.  "The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (consultative examiner opinion's based on independent examination of the claimant constitutes substantial evidence) (citations omitted); accord Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *14 (9th Cir. July 14, 2014) (discussing deference owed to

examining physician's opinion). The ALJ expressly gave "little" weight to Dr. Ibraheem's opinions that Plaintiff has significant mental limitations (A.R. 21). The ALJ appears to have rejected Dr. Ibraheem's opinions for the following stated reasons: (1) the "complete lack of any mental health objective evidence in the record"; (2) Dr. Ibraheem's purported failure "to consider the possibility and likely reality that the claimant was under the influence of drugs at the time" of the evaluation; and (3) the ALJ's view that Dr. Ibraheem's opinions "are inconsistent with the overall evidence in the record" (A.R. 20-22). These stated reasons are not supported by substantial evidence.

With regard to reason (1), the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted); see also Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (also noting that mental illness is notoriously under-reported); Etter v. Colvin, 2014 WL 2931145, at *2-*3 (C.D. Cal. June 26, 2014) (finding ALJ's residual functional capacity determination not supported by substantial evidence where ALJ gave "little" weight to the psychiatric consultative examiner's opinion and, in doing so, highlighted that the claimant had not received mental health treatment; citing, inter alia, Nguyen v. Chater). Ironically, the ALJ herself agreed at the outset of the hearing that a lack of psychiatric treatment does not necessarily preclude the existence of a psychiatric disorder of longstanding duration (A.R. 34).

With regard to reason (2), there is no evidence in the record suggesting that Dr. Ibraheem failed to consider whether Plaintiff was under the influence of drugs at the time of the evaluation. Dr. Ibraheem reported that Plaintiff admitted he was still doing pills or "coke" (cocaine) once a week (A.R. 263). Had Dr. Ibraheem, as a trained professional, then observed any hallmarks of use, Dr. Ibraheem presumably would have indicated a diagnosis at Axis I. See DSM-IV-TR at 28, 35 (Axis I disorders include substance-related disorders; an example of an Axis I disorder is alcohol abuse); see also DSM-IV-TR at 242-43 (cocaine use disorders); 270-71 (opiod use disorders). This stated reason to reject Dr. Ibraheem's opinion does not appear to be based on substantial evidence. Moreover, if the ALJ had any question concerning whether Dr. Ibraheem had ignored the possibility of drug use, the ALJ should have recontacted Dr. Ibraheem. See Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits. . . ."); Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (while it is a claimant's duty to provide the evidence to be used in making a residual functional capacity determination, "the ALJ should not be a mere umpire during disability proceedings") (citations and internal quotations omitted); Smolen v. Chater, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.") (citations omitted); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("The ALJ has a special duty to fully and fairly develop the record and to

assure that the claimant's interests are considered. This duty exists even when the claimant is represented by counsel."); compare Thornsberry v. Colvin, 552 Fed. App'x 691, 692 (9th Cir. 2014) (finding ALJ had no duty to recontact treating physicians because their reports were neither ambiguous nor insufficient to make a disability determination).

With regard to reason (3), the ALJ's characterization of Dr. Ibraheem's opinions as inconsistent with the "overall evidence in the record" is inapt. The only mental health evidence in the record supported, rather than contradicted, Dr. Ibraheem's conclusions. For example, the hospitalization records at the time of Plaintiff's release reflected the same GAF that Dr. Ibraheem assigned to Plaintiff on examination. Compare A.R. 265 with A.R. 301. An ALJ's material mischaracterization of the record can warrant remand. See, e.g., Regennitter v. Commissioner, 166 F.3d at 1297.[11]

---

[11] The Court observes that the ALJ's decision appears to contain three other mischaracterizations of the record. First, the ALJ claimed that she held the record open after the hearing but no records were submitted (A.R. 14). The ALJ's opinion is dated May 4, 2012, just three days after the hearing was held on May 1, 2012 (A.R. 23, 27). Records were submitted by Plaintiff's counsel as Exhibits 15F and 16F with facsimile transmission dates of May 2 and May 3, 2012, which were included in the Administrative Record. See A.R. 321-36. Second, the ALJ purported to observe that April, 2011 was the first time in the medical record that Plaintiff mentioned a casino accident, and that there were no medical records to support Plaintiff's report that he underwent diagnostic treatment including MRIs showing left knee and lumbar spine injuries (A.R. 19). However, Dr. Rajagopalan's January, 2011 orthopedic examination supported Plaintiff's report and reflected that Plaintiff had suffered a personal injury (A.R. 281-82). Third, the ALJ stated that Plaintiff had alluded to regular medication visits with James
(continued...)

14

1    The Court is unable to deem the above-discussed errors to have
2 been harmless. In the residual functional capacity adopted by the ALJ
3 and included in the questioning that led to the vocational expert's
4 identification of jobs Plaintiff purportedly could perform, the ALJ
5 assumed that Plaintiff has no mental limitations whatsoever. <u>See</u> A.R.
6 18, 70-72. The vocational expert later testified that a limitation to
7 "simple routine tasks with simple instructions" would not change the
8 analysis (A.R. 73). However, the vocational expert also testified
9 that if Plaintiff were limited in ways arguably consistent with Dr.
10 Ibraheem's opinion, there would exist no jobs that Plaintiff could
11 perform. <u>Compare</u> A.R. 74 with A.R. 265.

13    Because the circumstances of this case suggest that further
14 administrative review could remedy the ALJ's errors, remand is
15 appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>see</u>
16 <u>generally</u> <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (upon reversal of an
17 administrative determination, the proper course is remand for
18 additional agency investigation or explanation, except in rare
19 circumstances).
20 ///
21 ///
22 ///

---

24    [11](...continued)
25 Mayes, M.D., but Dr. Mays was unable to produce relevant records
   after repeated requests (A.R. 21). In fact, Dr. Mays' records
26 were produced as Exhibit 15F (A.R. 322-25). The only record
   evidence reportedly submitted to the Appeals Council for the
27 first time was the June 16, 2012 letter from Plaintiff's counsel
   (A.R. 8, 216-17). Thus, Dr. Mays' records apparently were before
28 the ALJ.

15

**CONCLUSION**

For all of the foregoing reasons,[12] Plaintiff's motion for summary judgment is granted in part and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 22, 2014.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[12] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. See Garrison v. Colvin, 2014 WL 3397218, at *21 (court may "remand for further proceedings, even though all conditions of the credit-as-true rule are satisfied, [when] an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").